**McGuireWoods LLP**
Athena G. Rutherford (SBN 328824)
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922
Email: arutherford@mcguirewoods.com

*Attorney for Defendant Synchrony Bank*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE RENEE LEMASTERS, | CASE NO. 5:26-CV-02096-NW |
| Plaintiff, | Hon. Noël Wise |
| v. | **DEFENDANT SYNCHRONY BANK'S AMENDED NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT** |
| EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; and SYNCHRONY BANK, N.A., | |
| Defendants. | Hearing:<br>Date:          September 23, 2026<br>Time:          9:00 am<br>Courtroom:          3 |

**AMENDED NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that on September 23 2026, at 9:00 a.m., in Courtroom 3 of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, the Honorable Judge Noel Wise presiding, Defendant Synchrony Bank ("Synchrony") will move to dismiss all claims asserted against it in Plaintiff Valerie Renee Lemasters' ("Plaintiff") Complaint under Federal Rule of Civil Procedure 12(b)(6). The Complaint fails to state a claim against Synchrony for which relief can be granted.

This Motion is based on this Notice, the following Memorandum of Points and Authorities, the Complaint, and any further matter presented to the Court at or before the hearing.

DATED: June 4, 2026                                              **MCGUIREWOODS LLP**

                                                              By: */s/ Athena G. Rutherford*
                                                                  Athena G. Rutherford

                                                              *Attorney for Synchrony Bank*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff's theory of liability is implausible on its face. She summarily concludes that Synchrony violated the Fair Credit Reporting Act ("FCRA") and the California Consumer Credit Reporting Agencies Act ("CCRAA") by inaccurately reporting her credit information in 2024 and 2025, while simultaneously conceding that **Synchrony transferred her account and all servicing obligations to Capital One in October 2019, more than *five years* earlier.** Unsurprisingly, Plaintiff fails to plausibly allege or explain why or how Synchrony—as opposed to the subsequent servicer—would receive Automated Credit Dispute Verification forms ("ACDVs") triggering statutory duties. Her claims fail for this reason alone. Moreover, and for similar reasons, Plaintiff does not sufficiently allege a deficient investigation, willful or negligent violations, or actual damages. The Complaint should be dismissed without leave to amend.

### II.    FACTUAL BACKGROUND

Plaintiff alleges she opened a Walmart-branded credit card with Synchrony (the "Account") in or around June 2018. Compl. ¶ 35. She further alleges that "[i]n or about October 2019," that "Capital One acquired Plaintiff's [Account] from Synchrony Bank and assumed responsibility for servicing the same." *Id.* ¶ 36. Synchrony later confirmed this in an October 2024 letter stating: "1) the [Account] had been transferred from Synchrony to Capital One on October 11, 2019; 2) the final status of the [Account] should be 'Transferred and Closed[.]'" *Id.* ¶ 57. In August 2023, Plaintiff paid off the Account balance *to Capital One* and stopped using the Account. *Id.* ¶ 37.

**First Dispute (August–September 2024).** In July 2024, Plaintiff discovered that Experian reported her Account as $50 past due—even though she had stopped using it around August 2023. *Id.* ¶¶ 37-38, 51. In August and September 2024, Plaintiff submitted "at least two disputes to Experian" requesting correction. *Id.* ¶ 51. Plaintiff concludes, without any actual facts, that Experian sent an ACDV to Synchrony and that Synchrony "verified its reporting as accurate . . . ." *Id.* ¶ 53.

**Second Dispute (December 2024).** In October 2024, Plaintiff discovered that both Equifax and Experian were inaccurately reporting the Account as past due. *Id.* ¶ 58. She mailed disputes to both agencies in December 2024. *Id.* ¶ 60. Again, Plaintiff concludes that both consumer reporting

agencies ("CRAs") sent an ACDV to Synchrony and that Synchrony directed them to update their reporting. *Id.* ¶¶ 62-63, 65.

**Third Dispute (February 2025).** In February 2025, Plaintiff mailed another dispute to Equifax and Experian concerning inaccurate payment-history reporting. *Id.* ¶¶ 66–68. Plaintiff alleges that both CRAs sent an ACDV to Synchrony and that Synchrony again directed them to update their reporting. *Id.* ¶¶ 70-71, 74.

**Fourth Dispute (May 2025).** In May 2025, Plaintiff mailed another dispute—this time to Experian alone—concerning continued inaccurate payment-history reporting. *Id.* ¶¶ 76–77. Plaintiff received no response. *Id.* ¶ 79.

**Fifth Dispute (June 2025).** Having received no response to her May 2025 letter, Plaintiff mailed yet another dispute to Experian in June 2025 concerning the same inaccurate payment-history reporting. *Id.* ¶ 81. Plaintiff alleges that Experian sent an ACDV to Synchrony and that Synchrony directed Experian to update its reporting. *Id.* ¶¶ 83-84, 87. At no point does Plaintiff ever explain *why* Synchrony would receive an ACDV if Capital One had assumed servicing responsibility in 2019, nor does she allege that Synchrony continued to furnish information after the Account's transfer in 2019. *See, e.g.*, *id.*, ¶ 67 ("there could not have been recent activity or late payments, as *Synchrony closed and transferred the account in October 2019. . .*").

Based on these disputes, Plaintiff asks this Court to hold *Synchrony*—the entity that admittedly last serviced the Account in October 2019—liable for inaccurate credit reporting that occurred five to six years later.

### III.    LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility demands more "than a sheer possibility that a defendant has acted unlawfully." *Id.* Although the court accepts factual allegations as true, it need not accept legal conclusions or unreasonable inferences. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Even under Rule 8(a)(2)'s liberal standard—requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief"—a "pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. Dismissal is warranted where the complaint lacks a cognizable legal theory or fails to plead essential facts supporting one. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984).

## IV.   LEGAL ARGUMENT

Plaintiff's FCRA and CCRAA claims fail for **three** independent reasons. *First*, Plaintiff never alleges a single fact to support the notion that Synchrony continued to furnish information on the Account *after* transferring it to Capital One in October 2019—a fact essential to any plausible theory of liability. *Second*, Plaintiff fails to allege any facts explaining that Synchrony did or should have received dispute notices from CRAs or that Synchrony's investigation was unreasonable. *Third*, Plaintiff has not sufficiently alleged that Synchrony's conduct was willful or negligent, or that she suffered actual damages. Each deficiency independently warrants dismissal.

### A.   Plaintiff's Own Allegations Negate Her Theory of Liability.

The Complaint should be dismissed in its entirety because Plaintiff's own allegations foreclose liability. Her allegations establish that Synchrony could not have been responsible for the inaccurate reporting she challenges.

Plaintiff concedes that after opening the Account in June 2018, Synchrony transferred it to Capital One "[i]n or about October 2019" and that Capital One "assumed responsibility for servicing the same."[1] Compl. ¶ 35; *see also id.* ¶ 57 (Synchrony "mailed Plaintiff a letter, dated October 14, 2024, confirming that 1) the [Account] had been transferred from Synchrony to Capital One on October 11, 2019; 2) the final status of the [Account] should be 'Transferred and Closed. . . .'"). Plaintiff paid off the Account balance *to Capital One* in August 2023 "and did not use it thereafter." *Id.* ¶ 37. Yet conspicuously absent from the Complaint is any allegation that Synchrony *continued* to furnish information on the Account *after* the October 2019 transfer. Plaintiff alleges—without explanation—that "[i]n response to each ACDV, Synchrony Bank verified its reporting as accurate" or directed CRAs to correct their reporting (*Id.* ¶¶ 52-53, 62-63, 65, 70-71, 74, 83-84, 87), while

---

[1] Plaintiff did not name Capital One—the last furnisher of the Account's information—as a Defendant.

3

simultaneously conceding that Capital One took over servicing after October 11, 2019. These allegations are mutually exclusive: if Capital One assumed servicing responsibility, Synchrony would not have been furnishing information. *See, e.g.*, *id.* ¶¶ 36, 57 (Synchrony October 14, 2024 correspondence with Plaintiff confirming reporting will reflect Account history with Synchrony Bank up to the transfer date of October 11, 2019).

### B.      Plaintiff Fails to State Actionable FCRA Violations.

Even if Plaintiff had plausibly alleged improper reporting by Synchrony—and she has not— her FCRA claim still fails because she has not stated an actionable violation of Section 1681s-2(b). FCRA imposes duties on furnishers only *after* they receive notice of a dispute regarding the "completeness or accuracy" of information provided to a CRA. To state a claim, a plaintiff must allege "(1) [s]he found an inaccuracy in h[er] credit report; (2) [s]he notified a credit reporting agency; (3) the credit reporting agency notified the furnisher of the information about the dispute; and (4) the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15 U.S.C. § 1681s-2(b)(1)(A)-(E).'" *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016). Critically, a furnisher's duties arise only *after* it receives a notice of dispute from a CRA. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).

Furnishers must investigate the disputed information, review all relevant information provided by the CRA, report the results of the investigation to the CRA, and report any incomplete or inaccurate information discovered in the investigation to "all other [CRAs]." 15 U.S.C. § 1681s-2(b)(1)(A)-(D). FCRA imposes liability for negligent or willful violations of the statute. *See Moran v. Screening Pros, LLC*, 25 F.4th 722, 728 (9th Cir. 2022).

"[A] plaintiff must show that the defendant acted pursuant to an objectively unreasonable interpretation of the statute" to show that a defendant negligently violated FCRA. *Id.* at 728 (citing *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673-74 (9th Cir. 2020)). "A private plaintiff who alleges a negligent violation of the FCRA may recover actual damages." *Warr v. Cent. Garden & Pet Co.*, No. 20-CV-09405-JST, 2021 WL 6275013, at *10 (N.D. Cal. Sept. 21, 2021). The term "actual damages" includes "recovery for emotional distress and humiliation." *Guimond v. Trans*

4

*Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

To prove a willful FCRA violation, a plaintiff must show "a knowing or reckless violation of a standard," or that "defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless." *Moran*, 25 F.4th at 728-29 (citing *Marino*, 978 F.3d at 673).

### 1. Plaintiff fails to plausibly allege Synchrony's receipt of dispute notices **or** an unreasonable investigation.

The Complaint does not plausibly allege any facts to suggest that Synchrony received notice of Plaintiff's disputes or that it conducted an unreasonable investigation. Nowhere does Plaintiff explain how or *why* Synchrony would receive an ACDV—the prerequisite for any FCRA duty—given her own admission that Synchrony transferred the Account *and* its servicing obligations in October 2019. *See* Compl. ¶¶ 35, 57. There is no explanation for why Synchrony would receive an ACDV when another furnisher—Capital One—had assumed all obligations related to the Account. By the time Plaintiff discovered any reporting disputes in 2024, Synchrony was no longer furnishing information on the Account. Further, even if Synchrony *did* furnish information related to the Account, the only dispute in which it failed to direct CRAs to correct their reporting was the *first dispute*. *See, e.g.*, *id.* ¶¶ 53 (Synchrony allegedly confirmed its reporting as accurate with respect to the first dispute), 63-65 (Synchrony directed Equifax and Experian to update the tradeline regarding the second dispute), 71-74 (Synchrony directed Equifax and Experian to update the tradeline with respect to the third dispute)[2], 84 (Synchrony directed Experian to update the Walmart tradeline with respect to the fifth dispute).

Nor does Plaintiff allege *facts* showing an unreasonable investigation. "An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Gorman*, 584 F.3d at 1161. Plaintiff recites a conclusory checklist of alleged failures—"failing to review all relevant information," "failing to accurately respond," "failing to correctly report results," and "failing to permanently and

---

[2] Plaintiff never received a response from CRAS related to her fourth dispute from May 2025, so it stands to reason that Synchrony never received an ACDV related to this dispute. *Id.* ¶ 79.

5

lawfully correct its own internal records." *Id.* ¶ 130. These are labels and conclusions, not facts. Plaintiff never explains *why* Synchrony would receive any of this information in the first place.

2.    <u>Plaintiff fails to allege willful or negligent conduct, or actual damages.</u>

To recover damages under FCRA, Plaintiff must allege either willful or negligent conduct— and she has done neither. *See Moran*, 25 F.4th at 728-29. Statutory or punitive damages require a "willful" violation. 15 U.S.C. § 1681n(a). Willfulness under FCRA encompasses "not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. of Am. v. Burr*, 551 U.S. 47, 57 (2007). A defendant acts recklessly when its action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Bateman v. Am. Multi– Cinema*, 623 F.3d 708, 711 n.1 (9th Cir. 2010) (quoting *Safeco*, 551 U.S. at 69). In other words, the defendant must have taken action involving "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (quoting *Safeco*, 551 U.S. at 68).

A negligent FCRA violation under Section 1681o entitles a plaintiff only to actual damages and costs. *See* 15 U.S.C. § 1681o(a)(1)-(2). To state such a claim, a plaintiff must allege more than "bald" and "conclusory" allegations of actual damages. *Burnthorne-Martinez v. Sephora USA, Inc.*, No. 16-CV-02843-YGR, 2016 WL 6892721, at *6 (N.D. Cal. Nov. 23, 2016); *see also Banga v. Chevron U.S.A.*, No. 11-CV-01498-JCS, 2013 WL 71772, at *11 (N.D. Cal. Jan. 7, 2013) ("[I]f a plaintiff can only prove a negligent violation of the FCRA, the plaintiff must also show actual damages caused by the conduct constituting a violation of the statute to make out a cause of action.").

Courts routinely dismiss FCRA claims resting on conclusory allegations of harm. *See, e.g.*, *Burnell v. Marin Humane Soc'y*, No. 14-CV-5635-JSC, 2015 WL 6746818, at *19 (N.D. Cal. Nov. 5, 2015) (dismissing where complaint lacked "any facts pertaining to the nature and extent of plaintiffs' emotional or mental suffering"); *Connelly v. Remkes*, No. 14-CV-1344-LHK, 2014 WL 5473144, at *13 (N.D. Cal. Oct. 28, 2014) (finding single paragraph alleging plaintiff "suffered great worry and concern" inadequate); *Crisafulli v. Amertias Life Ins.*, No. 13-CV-5937, 2015 WL 1969176, at *4 (D.N.J. Apr. 30, 2015) (dismissing FCRA negligence claim because plaintiff's

DEFENDANT SYNCHRONY BANK'S AMENDED NOTICE OF MOTION AND
MOTION TO DISMISS THE COMPLAINT

"threadbare allegations of emotional distress did not suffice").

Plaintiff's allegations of willfulness and negligence are conclusory. *See, e.g.*, Compl. ¶ 132. She never alleges that Synchrony *continued* to furnish information after the October 2019 transfer—a fact essential to any claim of wrongful conduct. She merely implies, without a plausible explanation, that Synchrony should have received ACDVs on an account it no longer serviced. *Id.* ¶¶ 36, 57. These bare assertions do not state a willful or negligent FCRA violation.

Plaintiff's damages allegations fare no better. She recites a laundry list: "being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and report." *Id.* ¶ 131. But asserting a "laundry list of categories of damages" without supporting facts warrants dismissal. *Dewi v. Wells Fargo Bank*, No. 12-2891, 2012 WL 10423239, at *8-9 (C.D. Cal. Aug. 8, 2012); *see also Naimi-Yazdi v. JPMorgan Chase Bank, N.A.*, No. 5:21-CV-04390-EJD, 2022 WL 2307068, at *3 (N.D. Cal. June 27, 2022) (dismissing FCRA claims where allegations of emotional distress were "too conclusory"); *Burnthorne-Martinez,* 2016 WL 6892721, at *6. Plaintiff's FCRA claims against Synchrony must be dismissed.

### C.    Plaintiff's CCRAA Claim Fails for the Same Reasons.

Plaintiff's CCRAA claim rises and falls with her FCRA claims.[3] Because those claims fail,

---

[3] The CCRAA mirrors the FCRA, and authorities construing the latter are persuasive when analyzing the former. *See Lopez v. Experian Info. Sols., Inc.*, No. 19-CV-01954-RS, 2022 WL 1569285, at *2 (N.D. Cal. May 18, 2022) ("The [C]CCRAA is based substantially on the FCRA, and the Ninth Circuit generally interprets the FCRA and [C]CCRAA consistently."); *see also Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 889 (9th Cir. 2010) ("[B]ecause the [C]CCRAA is substantially based on the Federal Fair Credit Reporting Act, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions.") (internal quotation marks omitted); *see, e.g.*, *Koeut v. Navient Corp.*, 2021 WL 4847027, at *3 (S.D. Cal. 2021) (holding that a plaintiff who alleged that defendants "were actually aware of the inaccurate information being furnished them" and "willfully fail[ed] to properly modify, delete, or block the reporting of the inaccurate and unlawful false negative information, without more information" had "not sufficiently pled facts amounting to claims" under California Civil Code Section 1785.25(a)).

7

so does the CCRAA claim. To prevail on a CCRAA claim, a "[p]laintiff must prove that (1) Defendant is a 'person' under the CCRAA, (2) Defendant reported information to a consumer reporting agency, (3) the information reported was inaccurate, (4) Plaintiff was harmed, and (5) Defendant knew or should have known the information was inaccurate." *Robbins v. CitiMortgage, Inc.*, No. 16-CV-04732-LHK, 2017 WL 6513662, at *14 (N.D. Cal. Dec. 20, 2017). But "even if Plaintiff proves these five elements, Defendant is not liable if Defendant establishes that Defendant maintained reasonable procedures to comply with § 1785.25." *Id.*

Plaintiff's CCRAA claim must be dismissed for the same reasons her FCRA claims fail. *See supra* Section IV.B. Her allegations of willfulness, negligence, and actual damages are equally inadequate under the CCRAA. *See Robbins*, 2017 WL 6513662, at *14. Without actual damages, a CCRAA claim fails as a matter of law. *See Banga v. Experian Info. Sol., Inc.*, No. C 09-04867 SBA, 2013 WL 5539690, at *7 (N.D. Cal. Sept. 30, 2013).

Plaintiff's CCRAA claim also fails because her own allegations foreclose liability. *See supra* Section IV.A. And her damages allegations are identical to those supporting her FCRA claims—the same conclusory recitation of harms without factual support: "being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and reports[.]" Compl. ¶ 139. Plaintiff's CCRAA claim fails as a matter of law.

## V.    CONCLUSION

For these reasons, Synchrony respectfully requests that the Court dismiss the Complaint with prejudice

///

///

///

///

DEFENDANT SYNCHRONY BANK'S AMENDED NOTICE OF MOTION AND
MOTION TO DISMISS THE COMPLAINT

DATED: June 4, 2026

**McGuireWoods LLP**

By:  */s/ Athena G. Rutherford*
Athena G. Rutherford

*Attorney for Defendant Synchrony Bank*

9

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2026, I electronically filed the foregoing document entitled **DEFENDANT SYNCHRONY BANK'S AMENDED NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of the same upon all counsel of record via the Court's electronic filing system.

*/s/ Athena G. Rutherford*
Athena G. Rutherford