Sophia M. Rios, SBN 305801
**BERGER MONTAGUE PC**
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
Tel. 858-252-6649
Facsimile: (215) 875-4604
Email: srios@bergermontague.com

Jacob H. Kalphat-Losego, SBN 358654
Hans W. Lodge,* MN Bar No. 0397012
**BERGER MONTAGUE PC**
1229 Tyle Street NE, Suite 205
Minneapolis, MN 55413
Tel. (612) 584-4470
jkalphatlosego@bergermontague.com
hlodge@bergermontague.com
*Admitted Pro Hac Vice*

*Counsel for Plaintiff*
*Valerie Renee Lemasters*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

|  |  |
|---|---|
| VALERIE RENEE LEMASTERS,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; CAPITAL ONE FINANCIAL CORPORATION; and SYNCHRONY BANK, N.A.,<br><br>Defendants. | Case No.: 5:26-CV-02096-NW<br><br>**FIRST AMENDED COMPLAINT**<br><br>(1)   Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*.; and<br><br>(2)   Violations of the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785, *et seq.*<br><br>**JURY TRIAL DEMANDED** |

Valerie Renee Lemasters ("Plaintiff"), by and through her undersigned counsel, brings this First Amended Complaint against Equifax Information Services, LLC, ("Defendant Equifax" or "Equifax"), Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") (Equifax and Experian collectively, the "Credit Bureau Defendants"), Capital One Financial Corporation ("Capital One") and Synchrony Bank, N.A. ("Synchrony Bank") (all defendants collectively, "Defendants"), for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of Equifax and Experian's inaccurate reporting of Plaintiff's Synchrony Bank and Capital One/Walmart credit card as having recent negative payment history and a balance when both of those representations are false.

## INTRODUCTION

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2. However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, Equifax acknowledges this potential for misuse and resulting damage every time it sells its respective credit monitoring services to a consumer.

3. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason.* * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.*

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)] (emphasis added).

8.      The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day

FIRST AMENDED COMPLAINT
Case No. 5:26-cv-02096-NW

period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(4).

10. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumers to a CRA, upon notice, to conduct a reasonable investigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and to modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said investigation is completed.

11. Plaintiff's claims arise out of the Defendants blatantly inaccurate credit reporting, wherein Synchrony Bank and/or Capital One furnished, and Equifax and Experian inaccurately reported, that Plaintiff's Walmart credit card had recent negative payment history when in fact it did not.

12. Accordingly, Plaintiff brings claims against Equifax and Experian for failing to follow reasonable procedures to assure the maximum possible accuracy of the contents of Plaintiff's credit file and report(s), in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiff's credit file and report(s), in violation of the FCRA, 15 U.S.C. § 1681i, as well as their state law equivalents.

13. Plaintiff also bring claims against Synchrony Bank and Capital One for failing to fully and properly investigate Plaintiff's dispute and review all relevant information provided to them by Equifax and Experian, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1), and its equivalent under state law.

14. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, and costs and attorneys' fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*, as described herein.

## THE PARTIES

15. Plaintiff Valerie Renee Lemasters ("Plaintiff") is a natural person who resides in the City of San Jose, County of Santa Clara, State of California, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16. Defendant Equifax Information Services LLC ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of California, including within this District.

17. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

18. Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a corporation authorized to do business in the State of California, including within this District.

19. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

20. Defendant Synchrony Bank, N.A. ("Defendant Synchrony Bank" or "Synchrony Bank") is a national banking association with its main office located at 777 Long Ridge Road, Stamford, Connecticut, and is authorized to do business in the State of California, including within this District.

21. Defendant Synchrony Bank is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

FIRST AMENDED COMPLAINT
Case No. 5:26-cv-02096-NW

22. Defendant Capital One Financial Corporation ("Defendant Capital One" or "Capital One") is a diversified American bank holding company with its main office located at 1680 Capital One Drive, McLean, Virginia, and is authorized to do business in the State of California, including within this District.

23. Defendant Capital One is a credit grantor and "Furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

### JURISDICTION AND VENUE

24. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### FACTS

**Summary of the Fair Credit Reporting Act**

26. The FCRA governs the conduct of consumer reporting agencies to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

27. The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…." 15 U.S.C. § 1681(b).

28. The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

FIRST AMENDED COMPLAINT
Case No. 5:26-cv-02096-NW

**The Credit Bureau Defendants' Processing of Credit Information**

29.     The Credit Bureau Defendants regularly receive information about consumers from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

30.     These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

31.     The Credit Bureau Defendants collect information from thousands of furnishers.

32.     The process by which the Credit Bureau Defendants receive, sort, and store information is largely electronic.

33.     Furnishers, including Synchrony Bank and Capital One, report credit information to the Credit Bureau Defendants through the use of coded tapes that are transmitted to the Credit Bureau Defendants on a monthly basis through software known as Metro 2.

34.     The Credit Bureau Defendants take the credit information reported by furnishers and create consumer credit files.

35.     The Credit Bureau Defendants maintain credit files on more than 200 million consumers.

36.     Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

**Capital One Acquires Plaintiff's Synchrony Bank/Walmart Credit Card in October 2019**

37.     In or about June 2018, Plaintiff opened a Walmart credit card, provided by Synchrony Bank.

38.     According to a July 26, 2018, report by *The Wall Street Journal*, Synchrony Bank announced in a securities filing that its partnership with Walmart was set to expire on July 31, 2019. A July 26, 2018, press release issued by Walmart announced that Capital One would become the exclusive issuer of Walmart's credit card program in the United States on August 1, 2019.

39.     By letter dated August 9, 2024, Synchrony Bank informed Plaintiff that her "Walmart Credit Card account [had] been acquired by Capital One effective October 11, 2019."

FIRST AMENDED COMPLAINT
Case No. 5:26-cv-02096-NW

Synchrony Bank's letter instructed Plaintiff to contact Capital One regarding future inquiries concerning the Walmart credit card.

40.    In an undated letter, Capital One informed Plaintiff that it received her payment on the account on August 17, 2023. In its letter, Capital One confirmed "[t]he balance on your Capital One account is now paid in full."

41.    When Plaintiff's Walmart credit card account changed hands from Synchrony Bank to Capital One, it resulted in two separate accounts appearing on Plaintiff's credit report. A copy of Plaintiff's May 6, 2024 credit report generated by Experian, for example, reported two separate tradelines for the account. The first was labeled "SYNCB/WALMART," provided Synchrony Bank's post office box and phone number, and contained payment information up to October 2019. The relevant portion of Plaintiff's May 6, 2024, Experian credit report is reproduced below:

**[THIS SPACE INTENTIONALLY LEFT BLANK]**

FIRST AMENDED COMPLAINT
Case No. 5:26-cv-02096-NW

42. The second tradeline was labeled "CAP1/WMT", provided Capital One's post office box and phone number, and contained payment information from October 2019 through August 2023. The relevant portion of Plaintiff's May 6, 2024 Experian credit report is reproduced below:

**experian.**

Prepared For **VALERIE R. LEMASTERS**    Date generated: May 6, 2024

**CAP1/WMT**                                                                                                    Closed

**43** potentially negative months

**Account info**

| | | | |
|---|---|---|---|
| Account name | **CAP1/WMT** | Balance | - |
| Account number | ▮▮▮▮▮▮▮ | Balance updated | - |
| Original creditor | - | Credit limit | $200 |
| Company sold | - | Monthly payment | - |
| Account type | **Charge Card** | Last Payment Date | **Aug 17, 2023** |
| Date opened | **Jun 14, 2018** | Highest balance | $337 |
| Open/closed | **Closed** | Terms | - |
| Status | **Paid, Closed. $337 written off.** | Responsibility | **Individual** |
| Status updated | **Aug 2023** | Your statement | - |

**Payment history**

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2023 | CO | CO | CO | CO | CO | CO | CO | CO | - | - | - | - |
| 2022 | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO |
| 2021 | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO |
| 2020 | 30 | 60 | 90 | 120 | 150 | CO | CO | CO | CO | CO | CO | CO |
| 2019 | - | - | - | - | - | - | - | - | - | ✓ | ✓ | ✓ |

✓ Current / Terms met    CO Charge off    30 Past due 30 days

60 Past due 60 days    90 Past due 90 days    120 Past due 120 days

150 Past due 150 days    - Data Unavailable

**Contact info**

Address      PO BOX 31293 SALT LAKE CITY, UT 84131

Phone number      (800) 955-7070

**Comments**

Account closed at credit grantor's request

Account previously in dispute - investigation complete, reported by data furnisher

43.      As the above reproductions make clear, Plaintiff's Walmart credit card was effectively split into two tradelines. Each tradeline identified the furnisher, including its name, post office box, and phone number. Thus, the "SYNCB/WALMART" tradeline was furnished by Synchrony Bank and the "CAP1/WMT" tradeline was furnished by Capital One.

10                    FIRST AMENDED COMPLAINT
                                          Case No. 5:26-cv-02096-NW

44. For the time being, the tradeline furnished by Synchrony Bank accurately reported that the account was closed, sold to Capital One, and that Plaintiff had never missed a payment. As alleged below, however, the "SYNCB/WALMART" tradeline would later inaccurately report that Plaintiff had a past due balance on the account.

45. The "CAP1/WMT" tradeline, on the other hand, inaccurately reported that Plaintiff's Walmart credit card had been charged off and that she had failed to pay the remaining balance. This false claim was directly contradicted by Capital One's own letter confirming that Plaintiff had paid the card off in full on August 17, 2023.

**Walmart and Capital One End Their Partnership, and Capital One Replaces Plaintiff's Walmart Credit Card with a Capital One Quicksilver Card**

46. A May 24, 2024, press release issued by Capital One announced it and Walmart had "ended the agreement that made Capital One the exclusive issuer of Walmart Consumer Credit Cards." The press release stated that "Capital One will retain ownership and servicing of the credit card accounts." In practice, according to an October 31, 2024, report by *U.S. News and World Report*, this meant that consumers' Walmart credit cards "were replaced by the Capital One Quicksilver Cash Rewards Credit Card." The outlet reported further that the corresponding tradelines on consumers' credit reports would be "updated to 'Capital One,' according to the Capital One website."

47. Meanwhile, the "SYNCB/WALMART" tradeline continued to report. The relevant portion of Plaintiff's July 18, 2024, Experian credit report is reproduced below:

Prepared For **VALERIE R. LEMASTERS**   Date generated: Jul 18, 2024

**SYNCB/WALMART**                                                    Closed

**Exceptional** payment history

### Account info

| | | | |
|---|---|---|---|
| Account name | **SYNCB/WALMART** | Balance | - |
| Account number | ▮▮▮▮▮▮ | Balance updated | - |
| Original creditor | - | Credit limit | $200 |
| Company sold | **CAPITAL ONE** | Monthly payment | - |
| Account type | **Charge Card** | Last Payment Date | Aug 21, 2019 |
| Date opened | **Jun 14, 2018** | Highest balance | $279 |
| Open/closed | **Closed** | Terms | - |
| Status | **Closed/Never late.** | Responsibility | Individual |
| Status updated | **Oct 2019** | Your statement | - |

### $ Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | CLS | - | - |
| 2018 | - | - | - | - | - | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

✓ Current / Terms met    CLS Closed    - Data Unavailable

### Contact info

Address   PO BOX 965024 ORLANDO, FL 32896

Phone number   (855) 893-5848

### Comments

Purchased by another lender

48.     As this screen capture demonstrates, Plaintiff's "SYNCB/WALMART" tradeline continued to accurately report—for the time being, at least—the account history through October 2019, including that the account was closed, sold to Capital One, and that Plaintiff had never missed a payment.

49.     The screen capture above further demonstrates that the tradeline identified the furnisher of the reported information. The "SYNCB/WALMART" tradeline identified Synchrony Bank by name, post office box, and phone number. The "SYNCB/WALMART" tradeline also identified Capital One as the purchaser of the account. Thus, it is inferable that Synchrony Bank

and/or Capital One furnished information concerning the "SYNCB/WALMART" tradeline on Plaintiff's credit reports.

50.     In sum, when Capital One acquired Plaintiff's Walmart credit card in 2019 the card was effectively split into two separate tradelines, at least for some period of time, reported by two separate furnishers. Each tradeline identified the furnisher of the reported information, providing Synchrony Bank's name, post office box, and phone number under the "SYNCB/WALMART" tradeline and for Capital One under the "CAP1/WMT" tradeline. Later, when the Capital One and Walmart partnership ended in 2024, the two tradelines persisted in Plaintiff's credit report and continued to identify the furnisher of the reported information, including its post office box and phone number. Throughout these changes in the account, only the "SYNCB/WALMART" tradeline was associated with both Synchrony Bank and Capital One.

**Plaintiff's Synchrony Bank/Walmart Credit Card Begins Reporting as Late in July 2024**

51.     In late July 2024, Plaintiff reviewed a copy of her Experian credit report and found that Experian was reporting her Synchrony Bank/Walmart account inaccurately, as follows:

> SYNCB/WALMART
> Account Number: 603220XXXXXXXXXX
> Status: Open. $50 past due as of Jul 2024.
> Balance: $237
> Balance Updated: 07/29/2024

52.     This reporting of Plaintiff's SYNCB/Walmart credit card account is inaccurate.

53.     As of July 2024, Plaintiff's SYNCB/Walmart account was 1) closed, 2) had no amount past due, and 3) there was no balance to update in July 2024, as Synchrony Bank had sold and transferred responsibility of said account to Capital One in 2019, which—for its part—confirmed that Plaintiff had paid the full balance on the account on August 17, 2023.

54.     Either Synchrony Bank, Capital One, or both, furnished this false information to Experian. As with the screen captures of the accounts above, the SYNCB/WALMART tradeline in Plaintiff's July 2024 Experian credit report reported that it had been sold to Capital One. Yet, the contact information listed under the tradeline belonged to Synchrony Bank—the furnisher's

address provided by Experian's July 2024 credit report is associated with the same tradeline on Plaintiff's Equifax credit report dated July 18, 2018—over a year before Capital One acquired the account. Thus, Synchrony Bank and/or Capital One furnished this false information to Experian.

55.     Certainly, at least one of Synchrony Bank or Capital One furnished the inaccurate information concerning Plaintiff's Walmart credit card account. Neither furnisher, however, was willing to take responsibility for the account.

56.     Specifically, each furnisher sent Plaintiff a letter concerning the account soon after Experian generated Plaintiff's credit report on July 29, 2024.

57.     Synchrony Bank's letter—dated August 9, 2024—informed Plaintiff that her "Walmart Credit Card account has been acquired by Capital One effective October 11, 2019" and "encourage[d] [her] to contact Capital One … with future inquiries."

58.     Similarly, Capital One's letter—dated August 26, 2024—told Plaintiff "we found that the credit bureaus are not displaying this account on your credit report" so there was "no update [Capital One] can make." Capital One, however, failed to address whether it was furnishing information under the "SYNCB/WALMART" tradeline as the reported purchaser of the account. In other words, despite the fact that the report associated both furnishers with the inaccurately reported tradeline, neither accepted responsibility for the account.

**The Credit Bureau Defendants' Method for Considering Consumer Credit Report Disputes**

59.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

60.     Specifically, the credit bureaus, Equifax, Experian, Trans Union, and Innovis, created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-

created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

61. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

62. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

63. Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

64. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

65. These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

66. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

67. The data furnishers, like Synchrony Bank and Capital One, then have an obligation under the FCRA to conduct a reasonable investigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

68. Once the data furnisher completes its investigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and/or belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and returning the ACDV to the respective credit bureau(s) via eOSCAR.

**Plaintiff Disputes Experian's Inaccurate Reporting in Late Summer 2024**

69. In August and September 2024, Plaintiff submitted at least two disputes to Experian requesting that it reinvestigate and correct its obviously inaccurate reporting.

70. Upon receipt of each dispute, Experian sent an ACDV regarding the SYNCB/WALMART tradeline to Synchrony Bank and/or Capital One. As alleged above, Experian's credit reports associated each furnisher with the account—reporting that it had been sold to Capital One while providing Synchrony Bank's name and contact information on the tradeline.

71. In response to each ACDV, Synchrony Bank and/or Capital One verified its reporting as accurate to Experian. Specifically, after it received Synchrony Bank and/or Capital One's response, Experian continued to inaccurately report the account as open and past due rather than closed and paid in full. Thus, inferably, Synchrony Bank and/or Capital One falsely verified the disputed information as accurate despite Capital One's letter confirming the account was paid in full on August 17, 2023, and despite Synchrony Bank's letter confirming the credit card was transferred and closed in October 2019, and that there were no late payments on the account. In doing so, Synchrony Bank and/or Capital One failed to conduct a reasonable investigation of Plaintiff's dispute.

**Plaintiff Contacts Synchrony Bank in October 2024**

72. On or about October 2, 2024, following Experian's repeated failures to correct the inaccurate reporting, Plaintiff contacted Synchrony Bank directly.

73. On at least one occasion in early October 2024, Plaintiff spoke with an employee of Synchrony Bank about the inaccurate reporting.

74. Synchrony Bank subsequently mailed Plaintiff a letter, dated October 14, 2024, confirming that 1) the Walmart credit card had been transferred from Synchrony to Capital One on October 11, 2019; 2) the final status of the Synchrony Bank/Walmart tradeline should be "Transferred and Closed;" and 3) that the Synchrony Bank/Walmart tradeline does not have any history of late payments.

FIRST AMENDED COMPLAINT
Case No. 5:26-cv-02096-NW

**The Credit Bureau Defendants' Inaccurate Reporting as of October 2024**

75.    As of October 2, 2024, Equifax was inaccurately reporting Plaintiff's Synchrony Bank/Walmart tradeline as follows:

> SYNCB/WALMART
> Account Number: *2363
> Activity Designator: Transfer/Sold/Paid
> Balance Amount: $0
> Status: Account closed; was 30-59 Days Past Due
> Amount Past Due: $50 in August 2024

76.    As of October 22, 2024, Experian was inaccurately reporting Plaintiff's Synchrony Bank/Walmart tradeline as follows:

> SYNCB/WALMART
> Account Number: 603220XXXXXXXXXX
> Status: Open. $50 past due as of Sep 2024.
> Balance: $237
> Balance Updated: Sep 17, 2024

As with its previous reports, Experian's report generated on October 22, 2024, reported that the SYNCB/WALMART tradeline had been sold to Capital One yet continued to list Synchrony Bank's name, address, and phone number. Though it reported a different address, the post office box provided with the tradeline on Equifax's October 2, 2024, report is likewise associated with Synchrony Bank.

**Plaintiff Disputes the Credit Bureau Defendants' Inaccurate Credit Reporting in December 2024**

77.    On or about December 10, 2024, Plaintiff mailed a letter, via first class certified mail, to Equifax and Experian, respectively, disputing their continued inaccurate reporting of her Walmart credit card.

78.    As part of her dispute, Plaintiff provided sufficient personal identification information, including her full name, date of birth, Social Security number, and current address; a photocopy of her current California driver's license; a copy of her inaccurate credit reports; and supporting documents confirming the inaccurate reporting.

**The Credit Bureau Defendants' Responses to Plaintiff's December 2024 Disputes**

79.     Upon receiving Plaintiff's written dispute in mid-December 2024, Experian and Equifax sent ACDVs to Synchrony Bank and/or Capital One regarding the inaccurate Walmart tradeline. As alleged above, Experian and Equifax both associated at least Synchrony Bank's name and address with the disputed tradeline. Further, Experian reported that the account had been sold to Capital One. Thus, Experian and Equifax inferably sent ACDVs to Synchrony Bank and/or Capital One.

80.     In response to an ACDV from Equifax, Synchrony Bank and/or Capital One directed Equifax to update the Walmart tradeline. These updates, however, contained inaccuracies contradicted by Synchrony Bank's and Capital One's letters to Plaintiff.

81.     On December 26, 2024, Plaintiff received dispute results from Equifax. Equifax removed the Amount Past Due from the Historical Account Information grid, but it still reflected activity in August 2024 and a "was past due" status.

82.     In response to an ACDV from Experian, Synchrony Bank and/or Capital One directed Experian to update the Walmart tradeline. As with their responses to Equifax, Synchrony Bank and/or Capital One's updates to Experian contained inaccuracies contradicted by Synchrony Bank's and Capital One's letters to Plaintiff.

83.     On January 2, 2025, Plaintiff received dispute results from Experian. Experian subsequently updated the Status to "Closed" and the Balance to "$0" but the Payment History grid continued to reflect a late payment, this time in January 2022.

84.     This was inaccurate as there could not have been recent activity or late payments. As alleged above, Synchrony Bank closed and transferred the Walmart credit card in October 2019 and confirmed there had been no late payment activity. Thus, the SYNCB/WALMART tradeline should have reflected that the account was transferred and closed, reported payment information only up to October 2019, and reflected no late payments.

**Plaintiff Disputes the Credit Bureau Defendants' Inaccurate Credit Reporting in February 2025**

85. On or about February 19, 2025, Plaintiff mailed a letter, via first class certified mail, to Equifax and Experian, respectively, disputing their continued inaccurate reporting of her Synchrony Bank/Walmart tradeline.

86. As part of her dispute, Plaintiff provided sufficient personal identification information, including her full name, date of birth, Social Security number, and current address; a photocopy of her current California driver's license; a copy of her inaccurate credit reports; and supporting documents confirming the inaccurate reporting.

**The Credit Bureau Defendants' Responses to Plaintiff's February 2025 Disputes**

87. Upon receiving Plaintiff's written dispute in late February 2025, Experian and Equifax sent ACDVs to Synchrony Bank and/or Capital One regarding the inaccurate Walmart tradeline.

88. In response to an ACDV from Equifax, Synchrony Bank and/or Capital One directed Equifax to update the Walmart tradeline. Equifax's dispute results associated both Capital One and Synchrony Bank with the disputed tradeline, reporting that the account had been sold to Capital One while providing a post office box address associated with Synchrony Bank.

89. On March 4, 2025, Plaintiff received dispute results from Equifax. Equifax did not update the August 2024 data to reflect the fact that Synchrony Bank closed and transferred the account in October 2019.

90. Equifax reported a $237 balance as of August 2024 despite the fact that the account had been transferred to and closed by a different financial entity for over five years.

91. In response to an ACDV from Experian, Synchrony Bank and/or Capital One directed Experian to update the Walmart tradeline. An April 21, 2025, credit report generated by Experian stated that the Synchrony Bank/Walmart tradeline was last updated in February 2025—inferably in response to Plaintiff's second dispute. That updated report continued to identify Capital One as the account's purchaser while providing Synchrony Bank's name, address, and phone number with the tradeline.

92. Experian's April 21, 2025, report demonstrates that Synchrony Bank and/or Capital One falsely verified inaccurate information to Experian. Experian reported that the disputed tradeline was closed, but inexplicably reported that payment was thirty days past due as of February 2025.

93. This information was flatly contradicted by Capital One's letter confirming that Plaintiff paid the account in full on August 17, 2023, and Synchrony Bank's letter confirming Plaintiff's Walmart credit card was transferred to Capital One in October 2019 and that there had been no late payments up to October 2019. In other words, there could not have been *any* payment data late 2024 or early 2025, as Synchrony Bank closed and transferred the account to Capital One in October 2019, and Capital One later confirmed that the balance on Plaintiff's Walmart credit card was paid in full on August 17, 2023. Thus, and as alleged above, the SYNCB/WALMART tradeline should have reflected that the account was transferred and closed, reported payment information only up to October 2019, and reflected no late payments and a zero balance.

**Plaintiff Disputes Experian's Inaccurate Credit Reporting in May 2025**

94. On or about May 9, 2025, Plaintiff mailed a letter, via first class certified mail to Experian disputing its continued inaccurate reporting of her Synchrony Bank/Walmart tradeline.

95. As part of her dispute, Plaintiff provided sufficient personal identification information, including her full name, date of birth, Social Security number, and current address; a photocopy of her current California driver's license; a copy of her inaccurate credit reports; and supporting documents confirming the inaccurate reporting.

**Experian's Response to Plaintiff's May 2025 Dispute**

96. Plaintiff did not receive any results or other communications from Experian regarding her May 2025 dispute.

97. Plaintiff is unaware of any indication Experian ever initiated a dispute in her response to her May 2025 dispute letter.

**Plaintiff Disputes Experian's Inaccurate Credit Reporting in June 2025**

98.    On or about June 13, 2025, following Experian's failure to respond to her previous dispute, Plaintiff mailed a letter, via first class certified mail, to Experian disputing its continued inaccurate reporting of her Synchrony Bank/Walmart tradeline.

99.    As part of her dispute, Plaintiff provided sufficient personal identification information, including her full name, date of birth, Social Security number, and current address; a photocopy of her current California driver's license; a copy of her inaccurate credit reports; and supporting documents confirming the inaccurate reporting.

**Experian's Response to Plaintiff's June 2025 Dispute**

100.    Upon receiving Plaintiff's written dispute in mid-June 2025, Experian sent an ACDV to Synchrony Bank and/or Capital One regarding the inaccurate Walmart tradeline. As with Experian's prior reports, Experian's July 2, 2025, dispute results associated both Capital One and Synchrony Bank with the disputed tradeline. Specifically, the results stated that the account had been sold to Capital One while providing Synchrony Bank's name, phone number and post office box address.

101.    In response to the ACDV from Experian, Synchrony Bank and/or Capital One directed Experian to update the Walmart tradeline. As with Plaintiff's earlier disputes, Synchrony Bank and/or Capital One's updates contained inaccuracies flatly contradicted by their own letters to Plaintiff.

102.    On or about July 2, 2025, Plaintiff reviewed a copy of her Experian credit report. The Payment History grid now inaccurately reflected a late payment in October 2019.

103.    The Credit Bureau Defendants continue to report Plaintiff's Synchrony Bank/Walmart tradeline inaccurately, despite Plaintiff's numerous disputes.

104.    Neither Synchrony Bank nor Capital One has corrected its inaccurate reporting to either Equifax or Experian, despite Plaintiff's numerous disputes. Plaintiff's January 15, 2026, credit report generated by Experian, for example, reports a late payment on the "SYNCB/WALMART" tradeline for October 2019. That report continues to list Capital One as the purchaser of the account, indicating that Capital One is a furnisher of information related to

the account. It also continues to identify Synchrony Bank by name, post office box address, and phone number. Importantly, whereas Experian's previous reports listed a post office box address in Orlando associated with Synchrony Bank, Experian's January 15, 2026, report now lists a post office box in Philadelphia associated with Synchrony Bank. Thus, Synchrony Bank has inferably continued to furnish information concerning the tradeline even after it was transferred and sold to Capital One.

105.    On numerous occasions from approximately July 2024 to the present day, the Credit Bureau Defendants have reported inaccurate information regarding Plaintiff's Walmart tradeline to numerous third-party entities and failed to correct it despite Plaintiff's numerous disputes.

106.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and reports.

107.    At all times pertinent hereto, the Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

108.    At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants, and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of Plaintiff herein.

109.    As a standard practice, Defendants Equifax and Experian do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information

received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

110.    Consistent with their standard policies and procedures, the Credit Bureau Defendants automatically generated their "investigation" results once the furnishers, Synchrony Bank and/or Capital One, provided their responses to Plaintiff's disputes, verifying the Walmart tradeline as accurately reporting late payment history in the recent past, and no employee or agent of the Credit Bureau Defendants took any additional steps after Synchrony Bank and/or Capital One provided their responses to Plaintiff's numerous disputes.

111.    Instead, the Credit Bureau Defendants blindly accepted Synchrony Bank and/or Capital One's incomplete version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

112.    The Credit Bureau Defendants continue the practice of parroting the response from furnishers even though they have been repeatedly sued for failing to conduct reasonable investigations as required by the FCRA.

113.    The Credit Bureau Defendants do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

114.    The Credit Bureau Defendants intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendants Equifax and Experian)**

115. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-114 as if fully stated herein.

116. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

117. On numerous occasions, Equifax and Experian assembled and published patently false consumer reports concerning Plaintiff.

118. Despite actual and readily available knowledge that Plaintiff's Walmart tradeline had been transferred and sold in October 2019, Equifax and Experian readily sold such false reports reflecting recent negative activity to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

119. Equifax and Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the contents of Plaintiff's credit files and credit reports.

120. As a result of Equifax and Experian's conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and reports.

121. Equifax and Experian's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

122. Plaintiff is entitled to recover attorneys' fees and costs from Equifax and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**Cal. Civ. Code § 1785.14(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum**
**Possible Accuracy**
**(Second Claim for Relief Against Defendants Equifax and Experian)**

123.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-114 as if fully stated herein.

124.   Equifax and Experian are each a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

125.   At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

126.   The above-mentioned credit reports are "consumer credit reports" as that term is defined by Cal. Civ. Code § 1785.3(c).

127.   Equifax and Experian violated Cal. Civ. Code § 1785.14(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they furnished regarding Plaintiff.

128.   Equifax and Experian negligently and willfully failed "to follow reasonable procedures to assure maximum possible accuracy" in preparing Plaintiff's credit reports. Cal. Civ. Code § 1785.14(b).

129.   As a result of Equifax and Experian's conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and the Defendants' failure to properly address and rectify the situation pursuant to the CCRAA's clear statutory mandates.

130.    Pursuant to Cal. Civ. Code § 1785.31, Plaintiff is entitled to recover her actual damages, statutory damages, punitive damages, injunctive relief, costs, and attorneys' fees in an amount to be determined by the Court.

**COUNT III**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Third Claim for Relief Against Defendants Equifax and Experian)**

131.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-114 as if fully stated herein.

132.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limitation for the completion of such an investigation. *Id.*

133.    The FCRA provides that if a CRA conducts a reinvestigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

134.    On multiple occasions, Plaintiff disputed the inaccurate information with Equifax and Experian and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the inaccurate reporting of recent negative information on her Walmart tradeline.

135.    In response to Plaintiff's disputes, Equifax and Experian conducted *no* reinvestigations of Plaintiff's disputes, or such reinvestigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

136.    Equifax and Experian, respectively, violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received

the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

137.    As a result of Equifax and Experian's conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and reports.

138.    Equifax and Experian's conduct, action, and inaction was willful, rendering them each liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

139.    Plaintiff is entitled to recover attorneys' fees and costs from Equifax and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**Cal. Civ. Code § 1785.16(a)**
**Failure to Perform Reasonable Reinvestigation**
**(Fourth Claim for Relief Against Defendants Equifax and Experian)**

140.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-114 as if fully stated herein.

141.    The Credit Bureau Defendants violated Cal. Civ. Code § 1785.16(a) by failing to conduct a reinvestigation to determine if the information it reported was accurate and/or by failing to correct or delete inaccurate information in Plaintiff's credit file before the end of the 30-day period beginning on the date on which the Credit Bureau Defendants received notice of the dispute from Plaintiff.

142.    The foregoing violations were negligent and/or willful.  The Credit Bureau Defendants acted in knowing or reckless disregard of their obligations and the rights of Plaintiff under Cal. Civ. Code § 1785.16(a). The Credit Bureau Defendants' conduct was intentionally

accomplished through their intended procedures; these procedures have continued despite the fact that the Credit Bureau Defendants and other consumer reporting agencies have been subject to agency and court decisions and consumer complaints critical of similar conduct; and the Credit Bureau Defendants will continue to engage in this conduct because they believe there is greater economic value in selling inaccurate consumer reports than engaging in the due diligence that would result in producing accurate reports.

143.    As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and the Defendants' failure to properly address and rectify the situation pursuant to the CCRAA's clear statutory mandates.

144.    Pursuant to Cal. Civ. Code § 1785.31, Plaintiff is entitled to recover her actual damages, statutory damages, punitive damages, injunctive relief, costs, and attorneys' fees in an amount to be determined by the Court.

**COUNT V**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct a Reasonable Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**
**(First Claim for Relief Against Defendants Synchrony Bank and Capital One)**

145.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-114 as if fully stated herein.

146.    Synchrony Bank and/or Capital One published the negative entry to Defendants Equifax and Experian.

147.    Synchrony Bank and/or Capital One violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of their inaccurate representations; by failing to

review all relevant information regarding the same as provided by Defendants Equifax and Experian via ACDV or otherwise; by failing to accurately respond to Defendants Equifax and Experian; by failing to correctly report results of an accurate investigation to Defendants Equifax and Experian; and by failing to permanently and lawfully correct their own internal records to prevent the re-reporting of their inaccurate representations to Defendants Equifax and Experian.

148.    As a result of Synchrony Bank and/or Capital One's conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and reports.

149.    Synchrony Bank and/or Capital One's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Synchrony Bank and/or Capital One were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

150.    Plaintiff is entitled to recover attorney's fees and costs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT VI**
**Cal. Civ. Code § 1785.25(a)**
**Failure to Perform Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendants Synchrony Bank and Capital One)**

151.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-114 as if fully stated herein.

152.    Plaintiff put Synchrony Bank and/or Capital One on notice via several disputes that the information they were reporting regarding her Synchrony Bank/Walmart tradeline was incomplete and/or inaccurate.

153. Despite this notice, Synchrony Bank and/or Capital One continued to report incomplete/inaccurate information, namely information that represented Plaintiff had recent late payment history on the Walmart tradeline when she in fact did not.

154. Synchrony Bank and/or Capital One violated Cal. Civ. Code § 1785.25(a) furnishing information they knew, or should have known, is incomplete or inaccurate.

155. The foregoing violations were negligent and/or willful. Synchrony Bank and/or Capital One acted in knowing or reckless disregard of its obligations and the rights of Plaintiff under Cal. Civ. Code § 1785.25(a).

156. As a result of Synchrony Bank and/or Capital One's conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and reports and Synchrony Bank and/or Capital One's failure to properly address and rectify the situation pursuant to the CCRAA's clear statutory mandates.

157. Pursuant to Cal. Civ. Code § 1785.31, Plaintiff is entitled to recover her actual damages, statutory damages, punitive damages, injunctive relief, costs, and attorneys' fees in an amount to be determined by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a) Determining that Defendants negligently and/or willfully violated the FCRA;

b) Awarding Plaintiff actual damages, statutory, and punitive damages as provided by the FCRA;

c)   Awarding Plaintiff her reasonable attorneys' fees and costs as provided by the FCRA;

d)   Determining that Defendants negligently and/or willfully violated the CCRA;

e)   Awarding Plaintiff actual, statutory, and punitive damages as provided by the CCRA;

f)   Awarding Plaintiff her reasonable attorneys' fees and costs as provided by the CCRA; and

g)   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

158.   Plaintiff demands a trial by jury.

Dated: June 17, 2026                    Respectfully submitted,

**BERGER MONTAGUE PC**

*/s/ Jacob H. Kalphat-Losego*
Jacob H. Kalphat-Losego, SBN 358654
Hans W. Lodge,* MN Bar No. 0397012
**BERGER MONTAGUE PC**
1229 Tyle Street NE, Suite 205
Minneapolis, MN 55413
Tel. (612) 584-4470
jkalphatlosego@bergermontague.com
hlodge@bergermontague.com
*Admitted Pro Hac Vice*

Sophia M. Rios, SBN 305801
**BERGER MONTAGUE PC**
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
Tel. 858-252-6649
Facsimile: (215) 875-4604
Email: srios@bergermontague.com

*Counsel for Plaintiff*