SEYFARTH SHAW LLP
Heliane Fabian (SBN 361563)
hfabian@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-3021

*Counsel for Defendant*
*Equifax Information Services LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE RENEE LEMASTERS, | Case No. 5:26-cv-02096-NW |
| Plaintiff, | **DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES** |
| v. | |
| EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; and SYNCHRONY BANK, N.A., | |
| Defendants. | |

Defendant EQUIFAX INFORMATION SERVICES LLC ("Equifax"), by and through its attorneys, hereby submits its Answer to Plaintiff's First Amended Complaint and Affirmative and Other Defenses, as follows:

### PRELIMINARY STATEMENT

In answering the First Amended Complaint, Equifax states that it is responding to allegations on behalf of itself only, even where the allegations pertain to alleged conduct by all Defendants. Equifax denies any and all allegations in the headings and/or unnumbered paragraphs in the Complaint.

### ANSWER

In response to the specific allegations in the enumerated paragraphs in the First Amended Complaint, Equifax responds as follows:

326694714v.1

## INTRODUCTION

**COMPLAINT ¶1:**

The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

**ANSWER:**

Because of the vague and generalized nature of the allegations, Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶2:**

However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, Equifax acknowledges this potential for misuse and resulting damage every time it sells its respective credit monitoring services to a consumer.

**ANSWER:**

Because of the vague and generalized nature of the allegations, Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶3:**

The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

2

326694714v.1

**ANSWER:**

Because of the vague and generalized nature of the allegations, Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶4:**

These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

**ANSWER:**

Because of the vague and generalized nature of the allegations, Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶5:**

Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶6:**

One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

326694714v.1

*See* 15 U.S.C. § 1681(a)(1).

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶7:**

The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.*

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)] (emphasis added).

**ANSWER:**

Equifax states that the case law referenced by this paragraph speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the case law referenced by this paragraph.

**COMPLAINT ¶8:**

The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

326694714v.1

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶9:**

In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(4).

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶10:**

The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumers to a CRA, upon notice, to conduct a reasonable investigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and to modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said investigation is completed.

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶11:**

Plaintiff's claims arise out of the Defendants blatantly inaccurate credit reporting, wherein Synchrony Bank and/or Capital One furnished, and Equifax and Experian inaccurately reported, that Plaintiff's Walmart credit card had recent negative payment history when in fact it did not.

326694714v.1

**ANSWER:**

Equifax admits that Plaintiff purports to make such allegations. Equifax denies that it violated the FCRA or any other law, denies it is liable to Plaintiff, and denies any remaining allegations in this paragraph.

**COMPLAINT ¶12:**

Accordingly, Plaintiff brings claims against Equifax and Experian for failing to follow reasonable procedures to assure the maximum possible accuracy of the contents of Plaintiff's credit file and report(s), in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiff's credit file and report(s), in violation of the FCRA, 15 U.S.C. § 1681i, as well as their state law equivalents.

**ANSWER:**

Equifax admits that Plaintiff purports to bring an action pursuant to the FCRA, but Equifax denies that it violated the law and further denies that Plaintiff is entitled to any relief whatsoever from Equifax. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶13:**

Plaintiff also bring claims against Synchrony Bank and Capital One for failing to fully and properly investigate Plaintiff's dispute and review all relevant information provided to them by Equifax and Experian, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1), and its equivalent under state law.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶14:**

As part of this action, Plaintiff seeks actual, statutory, and punitive damages, and costs and attorneys' fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*, as described herein.

**ANSWER:**

Equifax denies any and all allegations in this paragraph, denies that it violated the FCRA or any other law, and denies that Plaintiff is entitled to any relief whatsoever by the Complaint.

## THE PARTIES

**COMPLAINT ¶15:**

Plaintiff Valerie Renee Lemasters ("Plaintiff") is a natural person who resides in the City of San Jose, County of Santa Clara, State of California, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein, except admits, upon information and belief, that Plaintiff is a natural person and qualifies as a "consumer" under the FCRA.

**COMPLAINT ¶16:**

Defendant Equifax Information Services LLC ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of California, including within this District.

**ANSWER:**

Equifax admits that it is a Georgia limited liability company that maintains its principal address at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax admits that it is registered to do business in the State of California.

**COMPLAINT ¶17:**

Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**ANSWER:**

Equifax admits that some of its business activities make it a "consumer reporting agency" under the FCRA as to those activities only and, at times, it engages in the business of assembling, and disbursing consumer reports to third-parties. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶18:**

Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a corporation authorized to do business in the State of California, including within this District.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶19:**

Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶20:**

Defendant Synchrony Bank, N.A. ("Defendant Synchrony Bank" or "Synchrony Bank") is a national banking association with its main office located at 777 Long Ridge Road, Stamford, Connecticut, and is authorized to do business in the State of California, including within this District.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

326694714v.1

**COMPLAINT ¶21:**

Defendant Synchrony Bank is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶22:**

Defendant Capital One Financial Corporation ("Defendant Capital One" or "Capital One") is a diversified American bank holding company with its main office located at 1680 Capital One Drive, McLean, Virginia, and is authorized to do business in the State of California, including within this District.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶23:**

Defendant Capital One is a credit grantor and "Furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

## JURISDICTION AND VENUE

**COMPLAINT ¶24:**

This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

**ANSWER:**

To the extent Plaintiff has properly alleged the claims herein, Equifax admits that this Court may exercise its subject matter jurisdiction.

326694714v.1

**COMPLAINT ¶25:**

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**ANSWER:**

Equifax admits that the Plaintiff has alleged venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2). Equifax states that this is a legal conclusion which is not subject to denial or admission.

**FACTS**

**Summary of the Fair Credit Reporting Act**

**COMPLAINT ¶26:**

The FCRA governs the conduct of consumer reporting agencies to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶27:**

The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information...." 15 U.S.C. § 1681(b).

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**COMPLAINT ¶28:**

The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**The Credit Bureau Defendants' Processing of Credit Information**

**COMPLAINT ¶29:**

The Credit Bureau Defendants regularly receive information about consumers from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

**ANSWER:**

Equifax admits that, at times, it independently obtains consumer information from third-parties. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶30:**

These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

**ANSWER:**

Equifax admits that, at times, it independently obtains consumer information from "furnishers." Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶31:**

The Credit Bureau Defendants collect information from thousands of furnishers.

11

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**ANSWER:**

Because of the vague and generalized nature of the allegations, Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶32:**

The process by which the Credit Bureau Defendants receive, sort, and store information is largely electronic.

**ANSWER:**

Equifax admits that electronic means are used at times, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

**COMPLAINT ¶33:**

Furnishers, including Synchrony Bank and Capital One, report credit information to the Credit Bureau Defendants through the use of coded tapes that are transmitted to the Credit Bureau Defendants on a monthly basis through software known as Metro 2.

**ANSWER:**

Equifax admits that Metro 2 is a lexicon used by the credit reporting industry, but denies it is the only one used. Equifax further denies the remaining allegations in this paragraph.

**COMPLAINT ¶34:**

The Credit Bureau Defendants take the credit information reported by furnishers and create consumer credit files.

**ANSWER:**

Equifax admits that some of its business activities include using credit information reported by furnishers in the creation of consumer credit files. Equifax denies that it violated the FCRA and denies the remaining allegations in this paragraph.

**COMPLAINT ¶35:**

The Credit Bureau Defendants maintain credit files on more than 200 million consumers.

326694714v.1

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶36:**

Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

**ANSWER:**

Because of the vague and generalized nature of the allegations, Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**Capital One Acquires Plaintiff's Synchrony Bank/Walmart Credit Card in October 2019**

**COMPLAINT ¶37:**

In or about June 2018, Plaintiff opened a Walmart credit card, provided by Synchrony Bank.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶38:**

According to a July 26, 2018, report by The Wall Street Journal, Synchrony Bank announced in a securities filing that its partnership with Walmart was set to expire on July 31, 2019. A July 26, 2018, press release issued by Walmart announced that Capital One would become the exclusive issuer of Walmart's credit card program in the United States on August 1, 2019.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**COMPLAINT ¶39:**

By letter dated August 9, 2024, Synchrony Bank informed Plaintiff that her "Walmart Credit Card account [had] been acquired by Capital One effective October 11, 2019." Synchrony Bank's letter instructed Plaintiff to contact Capital One regarding future inquiries concerning the Walmart credit card.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶40:**

In an undated letter, Capital One informed Plaintiff that it received her payment on the account on August 17, 2023. In its letter, Capital One confirmed "[t]he balance on your Capital One account is now paid in full."

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶41:**

When Plaintiff's Walmart credit card account changed hands from Synchrony Bank to Capital One, it resulted in two separate accounts appearing on Plaintiff's credit report. A copy of Plaintiff's May 6, 2024 credit report generated by Experian, for example, reported two separate tradelines for the account. The first was labeled "SYNCB/WALMART," provided Synchrony Bank's post office box and phone number, and contained payment information up to October 2019. The relevant portion of Plaintiff's May 6, 2024, Experian credit report is reproduced below:

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**COMPLAINT ¶42:**

The second tradeline was labeled "CAP1/WMT", provided Capital One's post office box and phone number, and contained payment information from October 2019 through August 2023. The relevant portion of Plaintiff's May 6, 2024 Experian credit report is reproduced below:

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶43:**

As the above reproductions make clear, Plaintiff's Walmart credit card was effectively split into two tradelines. Each tradeline identified the furnisher, including its name, post office box, and phone number. Thus, the "SYNCB/WALMART" tradeline was furnished by Synchrony Bank and the "CAP1/WMT" tradeline was furnished by Capital One.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶44:**

For the time being, the tradeline furnished by Synchrony Bank accurately reported that the account was closed, sold to Capital One, and that Plaintiff had never missed a payment. As alleged below, however, the "SYNCB/WALMART" tradeline would later inaccurately report that Plaintiff had a past due balance on the account.

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶45:**

The "CAP1/WMT" tradeline, on the other hand, inaccurately reported that Plaintiff's Walmart credit card had been charged off and that she had failed to pay the remaining balance. This false claim was directly contradicted by Capital One's own letter confirming that Plaintiff had paid the card off in full on August 17, 2023.

17

326694714v.1

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**Walmart and Capital One End Their Partnership, and Capital One Replaces**

**Plaintiff's Walmart Credit Card with a Capital One Quicksilver Card**

**COMPLAINT ¶46:**

A May 24, 2024, press release issued by Capital One announced it and Walmart had "ended the agreement that made Capital One the exclusive issuer of Walmart Consumer Credit Cards." The press release stated that "Capital One will retain ownership and servicing of the credit card accounts." In practice, according to an October 31, 2024, report by *U.S. News and World Report*, this meant that consumers' Walmart credit cards "were replaced by the Capital One Quicksilver Cash Rewards Credit Card." The outlet reported further that the corresponding tradelines on consumers' credit reports would be "updated to 'Capital One,' according to the Capital One website."

**ANSWER:**

The allegations in this paragraph refer to a document, which speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the document referenced by this paragraph.

**COMPLAINT ¶47:**

Meanwhile, the "SYNCB/WALMART" tradeline continued to report. The relevant portion of Plaintiff's July 18, 2024, Experian credit report is reproduced below:

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

Prepared For VALERIE R. LEMASTERS    Date generated: Jul 18, 2024

### SYNCB/WALMART
Closed

**Exceptional** payment history

#### Account info

| | | | |
|---|---|---|---|
| Account name | SYNCB/WALMART | Balance | - |
| Account number | ▆▆▆▆▆▆▆ | Balance updated | - |
| Original creditor | - | Credit limit | $200 |
| Company sold | CAPITAL ONE | Monthly payment | - |
| Account type | Charge Card | Last Payment Date | Aug 21, 2019 |
| Date opened | Jun 14, 2018 | Highest balance | $279 |
| Open/closed | Closed | Terms | - |
| Status | Closed/Never late. | Responsibility | Individual |
| Status updated | Oct 2019 | Your statement | - |

#### Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | CLS | - | - |
| 2018 | - | - | - | - | - | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

✓ Current / Terms met     CLS Closed     - Data Unavailable

#### Contact info

Address     PO BOX 965024 ORLANDO,
FL 32896

Phone number     (855) 893-5848

#### Comments

Purchased by another lender

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶48:**

As this screen capture demonstrates, Plaintiff's "SYNCB/WALMART" tradeline continued to accurately report—for the time being, at least—the account history through October 2019, including that the account was closed, sold to Capital One, and that Plaintiff had never missed a payment.

19

326694714v.1

**ANSWER:**

The allegations in this paragraph refer to a document, which speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the document referenced by this paragraph.

**COMPLAINT ¶49:**

The screen capture above further demonstrates that the tradeline identified the furnisher of the reported information. The "SYNCB/WALMART" tradeline identified Synchrony Bank by name, post office box, and phone number. The "SYNCB/WALMART" tradeline also identified Capital One as the purchaser of the account. Thus, it is inferable that Synchrony Bank and/or Capital One furnished information concerning the "SYNCB/WALMART" tradeline on Plaintiff's credit reports.

**ANSWER:**

The allegations in this paragraph refer to a document, which speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the document referenced by this paragraph.

**COMPLAINT ¶50:**

In sum, when Capital One acquired Plaintiff's Walmart credit card in 2019 the card was effectively split into two separate tradelines, at least for some period of time, reported by two separate furnishers. Each tradeline identified the furnisher of the reported information, providing Synchrony Bank's name, post office box, and phone number under the "SYNCB/WALMART" tradeline and for Capital One under the "CAP1/WMT" tradeline. Later, when the Capital One and Walmart partnership ended in 2024, the two tradelines persisted in Plaintiff's credit report and continued to identify the furnisher of the reported information, including its post office box and phone number. Throughout these changes in the account, only the "SYNCB/WALMART" tradeline was associated with both Synchrony Bank and Capital One.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

20

326694714v.1

**Plaintiff's Synchrony Bank/Walmart Credit Card Begins Reporting as Late in July 2024**

**COMPLAINT ¶51:**

In late July 2024, Plaintiff reviewed a copy of her Experian credit report and found that Experian was reporting her Synchrony Bank/Walmart account inaccurately, as follows:

SYNCB/WALMART
Account Number: 603220XXXXXXXXXX
Status: Open. $50 past due as of Jul 2024.
Balance: $237
Balance Updated: 07/29/2024

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶52:**

This reporting of Plaintiff's SYNCB/Walmart credit card account is inaccurate.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶53:**

As of July 2024, Plaintiff's SYNCB/Walmart account was 1) closed, 2) had no amount past due, and 3) there was no balance to update in July 2024, as Synchrony Bank had sold and transferred responsibility of said account to Capital One in 2019, which—for its part— confirmed that Plaintiff had paid the full balance on the account on August 17, 2023.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶54:**

Either Synchrony Bank, Capital One, or both, furnished this false information to Experian. As with the screen captures of the accounts above, the SYNCB/WALMART tradeline in Plaintiff's July 2024 Experian credit report reported that it had been sold to Capital One. Yet, the contact information listed

21

326694714v.1

under the tradeline belonged to Synchrony Bank—the furnisher's address provided by Experian's July 2024 credit report is associated with the same tradeline on Plaintiff's Equifax credit report dated July 18, 2018—over a year before Capital One acquired the account. Thus, Synchrony Bank and/or Capital One furnished this false information to Experian.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶55:**

Certainly, at least one of Synchrony Bank or Capital One furnished the inaccurate information concerning Plaintiff's Walmart credit card account. Neither furnisher, however, was willing to take responsibility for the account.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶56:**

Specifically, each furnisher sent Plaintiff a letter concerning the account soon after Experian generated Plaintiff's credit report on July 29, 2024.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶57:**

Synchrony Bank's letter—dated August 9, 2024—informed Plaintiff that her "Walmart Credit Card account has been acquired by Capital One effective October 11, 2019" and "encourage[d] [her] to contact Capital One ... with future inquiries."

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

326694714v.1

**COMPLAINT ¶58:**

Similarly, Capital One's letter—dated August 26, 2024—told Plaintiff "we found that the credit bureaus are not displaying this account on your credit report" so there was "no update [Capital One] can make." Capital One, however, failed to address whether it was furnishing information under the "SYNCB/WALMART" tradeline as the reported purchaser of the account. In other words, despite the fact that the report associated both furnishers with the inaccurately reported tradeline, neither accepted responsibility for the account.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**The Credit Bureau Defendants' Method for Considering Consumer Credit Report Disputes**

**COMPLAINT ¶59:**

The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

**ANSWER:**

Equifax admits that it has implemented an automated system through which furnishers of information may report the results of a reinvestigation to it but denies the remaining allegations in this paragraph.

**COMPLAINT ¶60:**

Specifically, the credit bureaus, Equifax, Experian, Trans Union, and Innovis, created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

23

326694714v.1

**ANSWER:**

Equifax admits that the e-OSCAR system uses a specific lexicon, but denies that is the only one used. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶61:**

That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

**ANSWER:**

Equifax admits that Metro 2 and its CDIA guidelines are a lexicon used by the credit reporting industry, but denies that it is the only one used. Equifax further denies the remaining allegations in this paragraph.

**COMPLAINT ¶62:**

Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

**ANSWER:**

Equifax admits that the Metro 2 lexicon numeric codes that translate into representations that may appear on credit reports issued to third parties. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶63:**

Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

**ANSWER:**

Equifax admits that the Metro 2 lexicon is used with ACDVs. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶64:**

The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

24

326694714v.1

**ANSWER:**

Equifax admits the allegations in this paragraph.

**COMPLAINT ¶65:**

These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

**ANSWER:**

Equifax admits the allegations in this paragraph.

**COMPLAINT ¶66:**

Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

**ANSWER:**

Equifax admits that upon receiving a dispute, an ACDV is prepared and sent to a data furnisher reporting the disputed information, if that furnisher has elected to receive disputes via that process. Equifax lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

**COMPLAINT ¶67:**

The data furnishers, like Synchrony Bank and Capital One, then have an obligation under the FCRA to conduct a reasonable investigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**COMPLAINT ¶68:**

Once the data furnisher completes its investigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and/or belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and returning the ACDV to the respective credit bureau(s) via eOSCAR.

**ANSWER:**

Equifax admits that when investigation results are returned to it via e-OSCAR, the updated ACDV reflects the furnisher's response regarding the accuracy of disputed information; if any account information was updated during the investigation; or if the account should be deleted. Equifax denies that these are the only representations contained in an ACDV, and lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.

**Plaintiff Disputes Experian's Inaccurate Reporting in Late Summer 2024**

**COMPLAINT ¶69:**

In August and September 2024, Plaintiff submitted at least two disputes to Experian requesting that it reinvestigate and correct its obviously inaccurate reporting.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶70:**

Upon receipt of each dispute, Experian sent an ACDV regarding the SYNCB/WALMART tradeline to Synchrony Bank and/or Capital One. As alleged above, Experian's credit reports associated each furnisher with the account—reporting that it had been sold to Capital One while providing Synchrony Bank's name and contact information on the tradeline.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

326694714v.1

**COMPLAINT ¶71:**

In response to each ACDV, Synchrony Bank and/or Capital One verified its reporting as accurate to Experian. Specifically, after it received Synchrony Bank and/or Capital One's response, Experian continued to inaccurately report the account as open and past due rather than closed and paid in full. Thus, inferably, Synchrony Bank and/or Capital One falsely verified the disputed information as accurate despite Capital One's letter confirming the account was paid in full on August 17, 2023, and despite Synchrony Bank's letter confirming the credit card was transferred and closed in October 2019, and that there were no late payments on the account. In doing so, Synchrony Bank and/or Capital One failed to conduct a reasonable investigation of Plaintiff's dispute.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

<strong>Plaintiff Contacts Synchrony Bank in October 2024</strong>

**COMPLAINT ¶72:**

On or about October 2, 2024, following Experian's repeated failures to correct the inaccurate reporting, Plaintiff contacted Synchrony Bank directly.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶73:**

On at least one occasion in early October 2024, Plaintiff spoke with an employee of Synchrony Bank about the inaccurate reporting.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**COMPLAINT ¶74:**

Synchrony Bank subsequently mailed Plaintiff a letter, dated October 14, 2024, confirming that 1) the Walmart credit card had been transferred from Synchrony to Capital One on October 11, 2019; 2) the final status of the Synchrony Bank/Walmart tradeline should be "Transferred and Closed;" and 3) that the Synchrony Bank/Walmart tradeline does not have any history of late payments.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**The Credit Bureau Defendants' Inaccurate Reporting as of October 2024**

**COMPLAINT ¶75:**

As of October 2, 2024, Equifax was inaccurately reporting Plaintiff's Synchrony Bank/Walmart tradeline as follows:

SYNCB/WALMART
Account Number: *2363
Activity Designator: Transfer/Sold/Paid
Balance Amount: $0
Status: Account closed; was 30-59 Days Past Due
Amount Past Due: $50 in August 2024

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶76:**

As of October 22, 2024, Experian was inaccurately reporting Plaintiff's Synchrony Bank/Walmart tradeline as follows:

SYNCB/WALMART
Account Number: 603220XXXXXXXXXX
Status: Open. $50 past due as of Sep 2024.
Balance: $237
Balance Updated: Sep 17, 2024

28

326694714v.1

As with its previous reports, Experian's report generated on October 22, 2024, reported that the SYNCB/WALMART tradeline had been sold to Capital One yet continued to list Synchrony Bank's name, address, and phone number. Though it reported a different address, the post office box provided with the tradeline on Equifax's October 2, 2024, report is likewise associated with Synchrony Bank.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**Plaintiff Disputes the Credit Bureau Defendants' Inaccurate Credit Reporting in December 2024**

**COMPLAINT ¶77:**

On or about December 10, 2024, Plaintiff mailed a letter, via first class certified mail, to Equifax and Experian, respectively, disputing their continued inaccurate reporting of her Walmart credit card.

**ANSWER:**

Equifax admits that on December 17, 2024, it received a letter from Plaintiff concerning a SYNCB/Walmart account, the contents of which speak for themselves. Equifax denies reporting inaccurate information.

**COMPLAINT ¶78:**

As part of her dispute, Plaintiff provided sufficient personal identification information, including her full name, date of birth, Social Security number, and current address; a photocopy of her current California driver's license; a copy of her inaccurate credit reports; and supporting documents confirming the inaccurate reporting.

**ANSWER:**

Equifax admits that on December 17, 2024, it received a letter from Plaintiff concerning a SYNCB/Walmart account, the contents of which speak for themselves. Equifax denies reporting inaccurate information.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**The Credit Bureau Defendants' Responses to Plaintiff's December 2024 Disputes**

**COMPLAINT ¶79:**

Upon receiving Plaintiff's written dispute in mid-December 2024, Experian and Equifax sent ACDVs to Synchrony Bank and/or Capital One regarding the inaccurate Walmart tradeline. As alleged above, Experian and Equifax both associated at least Synchrony Bank's name and address with the disputed tradeline. Further, Experian reported that the account had been sold to Capital One. Thus, Experian and Equifax inferably sent ACDVs to Synchrony Bank and/or Capital One.

**ANSWER:**

Equifax admits that it contacted Synchrony, via ACDV, in connection with its investigation of Plaintiff's dispute received on December 17, 2024. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶80:**

In response to an ACDV from Equifax, Synchrony Bank and/or Capital One directed Equifax to update the Walmart tradeline. These updates, however, contained inaccuracies contradicted by Synchrony Bank's and Capital One's letters to Plaintiff.

**ANSWER:**

Equifax admits that it contacted Synchrony, via ACDV, in connection with its investigation of Plaintiff's dispute received on December 17, 2024, and Synchrony updated certain account information. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶81:**

On December 26, 2024, Plaintiff received dispute results from Equifax. Equifax removed the Amount Past Due from the Historical Account Information grid, but it still reflected activity in August 2024 and a "was past due" status.

**ANSWER:**

Equifax admits that on December 26, 2024, it sent Plaintiff reinvestigation results, the contents of which speak for themselves.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**COMPLAINT ¶82:**

In response to an ACDV from Experian, Synchrony Bank and/or Capital One directed Experian to update the Walmart tradeline. As with their responses to Equifax, Synchrony Bank and/or Capital One's updates to Experian contained inaccuracies contradicted by Synchrony Bank's and Capital One's letters to Plaintiff.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶83:**

On January 2, 2025, Plaintiff received dispute results from Experian. Experian subsequently updated the Status to "Closed" and the Balance to "$0" but the Payment History grid continued to reflect a late payment, this time in January 2022.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶84:**

This was inaccurate as there could not have been recent activity or late payments. As alleged above, Synchrony Bank closed and transferred the Walmart credit card in October 2019 and confirmed there had been no late payment activity. Thus, the SYNCB/WALMART tradeline should have reflected that the account was transferred and closed, reported payment information only up to October 2019, and reflected no late payments.

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**Plaintiff Disputes the Credit Bureau Defendants' Inaccurate Credit Reporting in February 2025**

**COMPLAINT ¶85:**

On or about February 19, 2025, Plaintiff mailed a letter, via first class certified mail, to Equifax and Experian, respectively, disputing their continued inaccurate reporting of her Synchrony Bank/Walmart tradeline.

**ANSWER:**

Equifax admits that on February 25, 2025, it received a letter from Plaintiff concerning a Synchrony/Walmart account, the contents of which speak for themselves. Equifax denies reporting inaccurate information.

**COMPLAINT ¶86:**

As part of her dispute, Plaintiff provided sufficient personal identification information, including her full name, date of birth, Social Security number, and current address; a photocopy of her current California driver's license; a copy of her inaccurate credit reports; and supporting documents confirming the inaccurate reporting.

**ANSWER:**

Equifax admits that on February 25, 2025, it received a letter from Plaintiff concerning a Synchrony/Walmart account, the contents of which speak for themselves. Equifax denies reporting inaccurate information.

**The Credit Bureau Defendants' Responses to Plaintiff's February 2025 Disputes**

**COMPLAINT ¶87:**

Upon receiving Plaintiff's written dispute in late February 2025, Experian and Equifax sent ACDVs to Synchrony Bank and/or Capital One regarding the inaccurate Walmart tradeline.

**ANSWER:**

Equifax admits that it contacted Synchrony, via ACDV, in connection with its investigation of Plaintiff's dispute received on February 25, 2025.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**COMPLAINT ¶88:**

In response to an ACDV from Equifax, Synchrony Bank and/or Capital One directed Equifax to update the Walmart tradeline. Equifax's dispute results associated both Capital One and Synchrony Bank with the disputed tradeline, reporting that the account had been sold to Capital One while providing a post office box address associated with Synchrony Bank.

**ANSWER:**

Equifax admits that it contacted Synchrony, via ACDV, in connection with its investigation of Plaintiff's dispute received on February 25, 2025, and Synchrony verified the disputed account information and updated account information unrelated to the dispute. Equifax admits that on March 4, 2025, it sent Plaintiff reinvestigation results, the contents of which speak for themselves.

**COMPLAINT ¶89:**

On March 4, 2025, Plaintiff received dispute results from Equifax. Equifax did not update the August 2024 data to reflect the fact that Synchrony Bank closed and transferred the account in October 2019.

**ANSWER:**

Equifax admits that on March 4, 2025, it sent Plaintiff reinvestigation results, the contents of which speak for themselves.

**COMPLAINT ¶90:**

Equifax reported a $237 balance as of August 2024 despite the fact that the account had been transferred to and closed by a different financial entity for over five years.

**ANSWER:**

Equifax admits that on March 4, 2025, it sent Plaintiff reinvestigation results, the contents of which speak for themselves.

**COMPLAINT ¶91:**

In response to an ACDV from Experian, Synchrony Bank and/or Capital One directed Experian to update the Walmart tradeline. An April 21, 2025, credit report generated by Experian stated that the Synchrony Bank/Walmart tradeline was last updated in February 2025— inferably in response to

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

Plaintiff's second dispute. That updated report continued to identify Capital One as the account's purchaser while providing Synchrony Bank's name, address, and phone number with the tradeline.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶92:**

Experian's April 21, 2025, report demonstrates that Synchrony Bank and/or Capital One falsely verified inaccurate information to Experian. Experian reported that the disputed tradeline was closed, but inexplicably reported that payment was thirty days past due as of February 2025.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶93:**

This information was flatly contradicted by Capital One's letter confirming that Plaintiff paid the account in full on August 17, 2023, and Synchrony Bank's letter confirming Plaintiff's Walmart credit card was transferred to Capital One in October 2019 and that there had been no late payments up to October 2019. In other words, there could not have been *any* payment data late 2024 or early 2025, as Synchrony Bank closed and transferred the account to Capital One in October 2019, and Capital One later confirmed that the balance on Plaintiff's Walmart credit card was paid in full on August 17, 2023. Thus, and as alleged above, the SYNCB/WALMART tradeline should have reflected that the account was transferred and closed, reported payment information only up to October 2019, and reflected no late payments and a zero balance.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

326694714v.1

**Plaintiff Disputes Experian's Inaccurate Credit Reporting in May 2025**

**COMPLAINT ¶94:**

On or about May 9, 2025, Plaintiff mailed a letter, via first class certified mail to Experian disputing its continued inaccurate reporting of her Synchrony Bank/Walmart tradeline.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶95:**

As part of her dispute, Plaintiff provided sufficient personal identification information, including her full name, date of birth, Social Security number, and current address; a photocopy of her current California driver's license; a copy of her inaccurate credit reports; and supporting documents confirming the inaccurate reporting.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**Experian's Response to Plaintiff's May 2025 Dispute**

**COMPLAINT ¶96:**

Plaintiff did not receive any results or other communications from Experian regarding her May 2025 dispute.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶97:**

Plaintiff is unaware of any indication Experian ever initiated a dispute in her response to her May 2025 dispute letter.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

### Plaintiff Disputes Experian's Inaccurate Credit Reporting in June 2025

**COMPLAINT ¶98:**

On or about June 13, 2025, following Experian's failure to respond to her previous dispute, Plaintiff mailed a letter, via first class certified mail, to Experian disputing its continued inaccurate reporting of her Synchrony Bank/Walmart tradeline.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶99:**

As part of her dispute, Plaintiff provided sufficient personal identification information, including her full name, date of birth, Social Security number, and current address; a photocopy of her current California driver's license; a copy of her inaccurate credit reports; and supporting documents confirming the inaccurate reporting.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

### Experian's Response to Plaintiff's June 2025 Dispute

**COMPLAINT ¶100:**

Upon receiving Plaintiff's written dispute in mid-June 2025, Experian sent an ACDV to Synchrony Bank and/or Capital One regarding the inaccurate Walmart tradeline. As with Experian's prior reports, Experian's July 2, 2025, dispute results associated both Capital One and Synchrony Bank with the disputed tradeline. Specifically, the results stated that the account had been sold to Capital One while providing Synchrony Bank's name, phone number and post office box address.

36

326694714v.1

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶101:**

In response to the ACDV from Experian, Synchrony Bank and/or Capital One directed Experian to update the Walmart tradeline. As with Plaintiff's earlier disputes, Synchrony Bank and/or Capital One's updates contained inaccuracies flatly contradicted by their own letters to Plaintiff.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶102:**

On or about July 2, 2025, Plaintiff reviewed a copy of her Experian credit report. The Payment History grid now inaccurately reflected a late payment in October 2019.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶103:**

The Credit Bureau Defendants continue to report Plaintiff's Synchrony Bank/Walmart tradeline inaccurately, despite Plaintiff's numerous disputes.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶104:**

Neither Synchrony Bank nor Capital One has corrected its inaccurate reporting to either Equifax or Experian, despite Plaintiff's numerous disputes. Plaintiff's January 15, 2026, credit report generated by Experian, for example, reports a late payment on the "SYNCB/WALMART" tradeline for October 2019. That report continues to list Capital One as the purchaser of the account, indicating that Capital One is a furnisher of information related to the account. It also continues to identify Synchrony Bank by name,

326694714v.1

post office box address, and phone number. Importantly, whereas Experian's previous reports listed a post office box address in Orlando associated with Synchrony Bank, Experian's January 15, 2026, report now lists a post office box in Philadelphia associated with Synchrony Bank. Thus, Synchrony Bank has inferably continued to furnish information concerning the tradeline even after it was transferred and sold to Capital One.

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶105:**

On numerous occasions from approximately July 2024 to the present day, the Credit Bureau Defendants have reported inaccurate information regarding Plaintiff's Walmart tradeline to numerous third-party entities and failed to correct it despite Plaintiff's numerous disputes.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶106:**

As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and reports.

**ANSWER:**

Equifax denies the allegations in this paragraph.

326694714v.1

**COMPLAINT ¶107:**

At all times pertinent hereto, the Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

**ANSWER:**

Equifax admits that it conducts business through its employees and others.  Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶108:**

At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants, and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of Plaintiff herein.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶109:**

As a standard practice, Defendants Equifax and Experian do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

**ANSWER:**

Equifax denies the allegations in this paragraph.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**COMPLAINT ¶110:**

Consistent with their standard policies and procedures, the Credit Bureau Defendants automatically generated their "investigation" results once the furnishers, Synchrony Bank and/or Capital One, provided their responses to Plaintiff's disputes, verifying the Walmart tradeline as accurately reporting late payment history in the recent past, and no employee or agent of the Credit Bureau Defendants took any additional steps after Synchrony Bank and/or Capital One provided their responses to Plaintiff's numerous disputes.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶111:**

Instead, the Credit Bureau Defendants blindly accepted Synchrony Bank and/or Capital One's incomplete version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶112:**

The Credit Bureau Defendants continue the practice of parroting the response from furnishers even though they have been repeatedly sued for failing to conduct reasonable investigations as required by the FCRA.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶113:**

The Credit Bureau Defendants do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

**ANSWER:**

Equifax denies the allegations in this paragraph.

326694714v.1

**COMPLAINT ¶114:**

The Credit Bureau Defendants intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

**ANSWER:**

Equifax denies the allegations in this paragraph.

### CLAIMS FOR RELIEF

### COUNT II

### Cal. Civ. Code § 1785.14(b)

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy (Second Claim for Relief Against Defendants Equifax and Experian)**

**COMPLAINT ¶115:**

Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-114 as if fully stated herein.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶116:**

The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶117:**

On numerous occasions, Equifax and Experian assembled and published patently false consumer reports concerning Plaintiff.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶118:**

Despite actual and readily available knowledge that Plaintiff's Walmart tradeline had been transferred and sold in October 2019, Equifax and Experian readily sold such false reports reflecting recent negative activity to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶119:**

Equifax and Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the contents of Plaintiff's credit files and credit reports.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶120:**

As a result of Equifax and Experian's conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and reports.

**ANSWER:**

Equifax denies the allegations in this paragraph.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**COMPLAINT ¶121:**

Equifax and Experian's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER:**

Equifax denies any and all allegations in this paragraph, denies that it violated the FCRA or any other law, and denies that Plaintiff is entitled to any damages whatsoever.

**COMPLAINT ¶122:**

Plaintiff is entitled to recover attorneys' fees and costs from Equifax and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER:**

Equifax denies that Plaintiff is entitled to any relief whatsoever by the Complaint.

**COUNT II**

**Cal. Civ. Code § 1785.14(b)**

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

**(Second Claim for Relief Against Defendants Equifax and Experian)**

**COMPLAINT ¶123:**

Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-114 as if fully stated herein.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶124:**

Equifax and Experian are each a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

**ANSWER:**

Equifax admits that some of its business activities make it a "consumer reporting agency" under the CCCRAA as to those activities only.  Equifax denies the remaining allegations in this paragraph.

43

**COMPLAINT ¶125:**

At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(b).

**ANSWER:**

Upon information and belief, Equifax admits the allegations in this paragraph.

**COMPLAINT ¶126:**

The above-mentioned credit reports are "consumer credit reports" as that term is defined by Cal. Civ. Code § 1785.3(c).

**ANSWER:**

Equifax states that this paragraph contains legal conclusions not subject to admission or denial. If further response is required, Equifax states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

**COMPLAINT ¶127:**

Equifax and Experian violated Cal. Civ. Code § 1785.14(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they furnished regarding Plaintiff.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶128:**

Equifax and Experian negligently and willfully failed "to follow reasonable procedures to assure maximum possible accuracy" in preparing Plaintiff's credit reports. Cal. Civ. Code § 1785.14(b).

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶129:**

As a result of Equifax and Experian's conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm

44

326694714v.1

to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and the Defendants' failure to properly address and rectify the situation pursuant to the CCRAA's clear statutory mandates.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶130:**

Pursuant to Cal. Civ. Code § 1785.31, Plaintiff is entitled to recover her actual damages, statutory damages, punitive damages, injunctive relief, costs, and attorneys' fees in an amount to be determined by the Court.

**ANSWER:**

Equifax denies any and all allegations in this paragraph, denies that it violated the CCCRAA or any other law, and denies that Plaintiff is entitled to any relief whatsoever by the Complaint.

**COUNT III**

**15 U.S.C. § 1681i**

**Failure to Perform a Reasonable Reinvestigation**

**(Third Claim for Relief Against Defendants Equifax and Experian)**

**COMPLAINT ¶131:**

Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-114 as if fully stated herein.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶132:**

The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the

326694714v.1

consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limitation for the completion of such an investigation. *Id.*

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶133:**

The FCRA provides that if a CRA conducts a reinvestigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶134:**

On multiple occasions, Plaintiff disputed the inaccurate information with Equifax and Experian and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the inaccurate reporting of recent negative information on her Walmart tradeline.

**ANSWER:**

Equifax admits that it has received disputes from Plaintiff concerning the Synchrony/Walmart account, the contents of which speak for themselves. Equifax denies the remaining allegations in this paragraph.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**COMPLAINT ¶135:**

In response to Plaintiff's disputes, Equifax and Experian conducted no reinvestigations of Plaintiff's disputes, or such reinvestigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶136:**

Equifax and Experian, respectively, violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶137:**

As a result of Equifax and Experian's conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and reports.

**ANSWER:**

Equifax denies the allegations in this paragraph.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**COMPLAINT ¶138:**

Equifax and Experian's conduct, action, and inaction was willful, rendering them each liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER:**

Equifax denies any and all allegations in this paragraph, denies that it violated the FCRA or any other law, and denies that Plaintiff is entitled to any damages whatsoever.

**COMPLAINT ¶139:**

Plaintiff is entitled to recover attorneys' fees and costs from Equifax and Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER:**

Equifax denies that Plaintiff is entitled to any relief whatsoever by the Complaint.

**COUNT IV**

**Cal. Civ. Code § 1785.16(a)**

**Failure to Perform Reasonable Reinvestigation**

**(Fourth Claim for Relief Against Defendants Equifax and Experian)**

**COMPLAINT ¶140:**

Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-114 as if fully stated herein.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶141:**

The Credit Bureau Defendants violated Cal. Civ. Code § 1785.16(a) by failing to conduct a reinvestigation to determine if the information it reported was accurate and/or by failing to correct or delete inaccurate information in Plaintiff's credit file before the end of the 30-day period beginning on the date on which the Credit Bureau Defendants received notice of the dispute from Plaintiff.

326694714v.1

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶142:**

The foregoing violations were negligent and/or willful. The Credit Bureau Defendants acted in knowing or reckless disregard of their obligations and the rights of Plaintiff under Cal. Civ. Code § 1785.16(a). The Credit Bureau Defendants' conduct was intentionally accomplished through their intended procedures; these procedures have continued despite the fact that the Credit Bureau Defendants and other consumer reporting agencies have been subject to agency and court decisions and consumer complaints critical of similar conduct; and the Credit Bureau Defendants will continue to engage in this conduct because they believe there is greater economic value in selling inaccurate consumer reports than engaging in the due diligence that would result in producing accurate reports.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶143:**

As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and the Defendants' failure to properly address and rectify the situation pursuant to the CCRAA's clear statutory mandates.

**ANSWER:**

Equifax denies the allegations in this paragraph.

49

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**COMPLAINT ¶144:**

Pursuant to Cal. Civ. Code § 1785.31, Plaintiff is entitled to recover her actual damages, statutory damages, punitive damages, injunctive relief, costs, and attorneys' fees in an amount to be determined by the Court.

**ANSWER:**

Equifax denies any and all allegations in this paragraph, denies that it violated the CCCRAA or any other law, and denies that Plaintiff is entitled to any relief whatsoever by the Complaint.

**COUNT V**

**15 U.S.C. § 1681s-2(b)**

**Failure to Conduct a Reasonable Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**

**(First Claim for Relief Against Defendants Synchrony Bank and Capital One)**

**COMPLAINT ¶145:**

Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-114 as if fully stated herein.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶146:**

Synchrony Bank and/or Capital One published the negative entry to Defendants Equifax and Experian.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶147:**

Synchrony Bank and/or Capital One violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of their inaccurate representations; by failing to review all relevant information regarding the same as provided by Defendants Equifax and Experian via ACDV or otherwise;

326694714v.1

by failing to accurately respond to Defendants Equifax and Experian; by failing to correctly report results of an accurate investigation to Defendants Equifax and Experian; and by failing to permanently and lawfully correct their own internal records to prevent the re-reporting of their inaccurate representations to Defendants Equifax and Experian.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶148:**

As a result of Synchrony Bank and/or Capital One's conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and reports.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶149:**

Synchrony Bank and/or Capital One's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Synchrony Bank and/or Capital One were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

326694714v.1

**COMPLAINT ¶150:**

Plaintiff is entitled to recover attorney's fees and costs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COUNT VI**

**Cal. Civ. Code § 1785.25(a)**

**Failure to Perform Reasonable Reinvestigation**

**(Second Claim for Relief Against Defendants Synchrony Bank and Capital One)**

**COMPLAINT ¶151:**

Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-114 as if fully stated herein.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶152:**

Plaintiff put Synchrony Bank and/or Capital One on notice via several disputes that the information they were reporting regarding her Synchrony Bank/Walmart tradeline was incomplete and/or inaccurate.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶153:**

Despite this notice, Synchrony Bank and/or Capital One continued to report incomplete/inaccurate information, namely information that represented Plaintiff had recent late payment history on the Walmart tradeline when she in fact did not.

326694714v.1

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶154:**

Synchrony Bank and/or Capital One violated Cal. Civ. Code § 1785.25(a) furnishing information they knew, or should have known, is incomplete or inaccurate.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶155:**

The foregoing violations were negligent and/or willful. Synchrony Bank and/or Capital One acted in knowing or reckless disregard of its obligations and the rights of Plaintiff under Cal. Civ. Code § 1785.25(a).

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶156:**

As a result of Synchrony Bank and/or Capital One's conduct, action, and inaction, Plaintiff suffered a range of actual damages including, without limitation, being chilled from applying for credit opportunities; harm to credit score; loss of the ability to purchase and benefit from her good name and credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of having false information about her circulated in her credit files and reports and Synchrony Bank and/or Capital One's failure to properly address and rectify the situation pursuant to the CCRAA's clear statutory mandates.

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶157:**

Pursuant to Cal. Civ. Code § 1785.31, Plaintiff is entitled to recover her actual damages, statutory damages, punitive damages, injunctive relief, costs, and attorneys' fees in an amount to be determined by the Court.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

a) Determining that Defendants negligently and/or willfully violated the FCRA;

b) Awarding Plaintiff actual damages, statutory, and punitive damages as provided by the FCRA;

c) Awarding Plaintiff her reasonable attorneys' fees and costs as provided by the FCRA;

d) Determining that Defendants negligently and/or willfully violated the CCRA;

e) Awarding Plaintiff actual, statutory, and punitive damages as provided by the CCRA;

f) Awarding Plaintiff her reasonable attorneys' fees and costs as provided by the CCRA; and

g) Granting further relief, in law or equity, as this Court may deem appropriate and just.

**ANSWER:**

Equifax denies that Plaintiff is entitled to any relief whatsoever by the Complaint.

**DEMAND FOR JURY TRIAL**

**COMPLAINT ¶158:**

Plaintiff demands a trial by jury.

54

326694714v.1

**ANSWER:**

Equifax admits that Plaintiff demands a jury trial on all triable issues. Equifax objects to a jury trial on any claims for equitable relief and all other issues as to which a jury is not permitted as of right or as a matter of law.

### AFFIRMATIVE AND OTHER DEFENSES

Equifax asserts the following affirmative and other defenses to the Complaint:

### FIRST DEFENSE

Equifax is not subject to general or specific jurisdiction in this Court as to the claims brought by Plaintiff against Equifax. Equifax is neither incorporated nor headquartered in California, and the conduct giving rise to Plaintiff's claims against Equifax occurred outside of California and was not targeted at California.

### SECOND DEFENSE

Plaintiff's claim fails in whole or in part to state a claim against Equifax upon which relief can be granted.

### THIRD DEFENSE

At all relevant times herein, the Plaintiff's alleged damages, which Equifax denies exist, were aggravated by the failure of Plaintiff to use reasonable diligence to mitigate the same. Therefore, Plaintiff's recovery, if any, should be barred or decreased by reason of her failure to mitigate alleged losses.

**WHEREFORE**, having fully answered or otherwise responded to the allegations in Plaintiff's Complaint, Equifax prays that:

(1)    Plaintiff's Complaint be dismissed in its entirety and with prejudice as to Equifax, with all costs taxed against Plaintiff;

(2)    it be dismissed as a party to this action;

(3)    it recover such other and additional relief as the Court deems just and appropriate.

326694714v.1

DATED: July 1, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Heliane Fabian*
    Heliane Fabian
    *Counsel for Defendant*
    *Equifax Information Services LLC*

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

326694714v.1

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2026, I presented the foregoing DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

       */s/ Heliane Fabian*
       Heliane Fabian
       *Counsel for Defendant*
       *Equifax Information Services LLC*

326694714v.1